**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**VIRGIN MOBILE USA, L.P.,**

    **Plaintiff,**

    v.

**PAT APPLE, ET AL.,**

    **Defendants.**

Case No. 17-CV-2524-JAR-JPO

**MEMORANDUM AND ORDER**

Plaintiff Virgin Mobile, USA, L.P. ("Virgin Mobile") filed this action against the Commissioners of the Kansas Corporation Commission to prevent them from enforcing an order that requires Virgin Mobile to report as retail revenue the subsidies that it received from the Federal Universal Service Fund's Lifeline Program. Before the Court is Defendants' Motion to Dismiss (Doc. 22). The motion is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court denies the motion.

**I.     Statutory and Regulatory Framework**

Congress enacted the Federal Communications Act of 1934 ("FCA") to "regulat[e] interstate and foreign commerce in communication by wire and radio so as to make available . . . to all the people of the United States, . . . a rapid, efficient . . . communication service with adequate facilities at reasonable charges."[1] The Federal Communications Commission ("FCC") was created to execute and enforce the FCA.[2] The FCA empowers the FCC to create programs to advance universal telecommunications services in the United States. One such program is the

---

[1] 47 U.S.C. § 151.

[2] *Id.*

1

Lifeline Assistance Program, which subsidizes eligible telecommunications carriers that provide low-income households with access to discounted or free telephone services.[3]

The FCA required the federal government to create a universal service fund ("USF") to provide the support necessary to ensure affordable telecommunications services to rural and low-income areas.[4] Telecommunications service providers contribute a percentage of their revenues to this fund.[5] The FCA specifically allows states to create their own USFs and to impose state USF surcharges on telecommunications carriers who provide **intra**state services, provided that those surcharges are "equitable and nondiscriminatory" and that they do not "rely on or burden" the mechanism for collecting federal USF fees.[6] The FCA allocates authority over the USFs by the services provided:

> the [FCC], with respect to **interstate** services, and the States, with respect to **intrastate** services, shall establish any necessary cost allocation rules, accounting safeguards, and guidelines to ensure that services included in the definition of universal service bear no more than a reasonable share of the joint and common costs of facilities used to provide those services.[7]

The Kansas legislature passed the Kansas Telecommunications Act ("KTA") in 1996, with the goal of ensuring that every Kansan had access to first class telecommunications service at an affordable price while at the same time promoting consumer access in all areas of the state.[8] Kansas has its own corporation commission ("KCC") and universal service fund ("KUSF").[9]

---

[3] 47 U.S.C. § 254(j).

[4] 47 U.S.C. § 254(b).

[5] 47 U.S.C. § 254(b)(3).

[6] 47 U.S.C. § 254(f).

[7] 47 U.S.C. § 254(k) (emphasis added).

[8] K.S.A. § 66-2001, et seq.

[9] K.S.A. § 66-2002.

**II.     Factual Background**

The Court summarizes the facts alleged in the Complaint as follows and assumes them to be true for purposes of deciding this motion.

Virgin Mobile is a Delaware, limited partnership with a principal place of business in Overland Park, Kansas. Virgin Mobile provides telecommunications services. It participates in the Federal Lifeline Program by providing qualified low-income consumers in Kansas with wireless communications at no charge. Virgin Mobile receives $9.25 per month for each eligible subscriber from the Federal Universal Service Fund ("FUSF").

Defendants Pat Apple, Shari Feist Albrecht, and Jay Scott Emler, are Commissioners of the KCC. On August 2, 2016, they directed GVNW Consulting, Inc. ("GVNW") to perform an audit of Virgin Mobile for KUSF purposes. On June 1, 2017, GVNW filed its Final Audit Report, finding:

> Virgin Mobile reports top-up revenue, but does not report a monthly recurring service charge (MRC) to the KUSF. Virgin Mobile receives $9.25 per month from the Federal Lifeline program for each eligible Kansas Lifeline subscriber in lieu of collecting it from its end-user subscribers. The company has chosen not to report this revenue to the KUSF, claiming that it does not collect an MRC from subscribers and Federal Lifeline support is exempt from the KUSF.
>
> KUSF Lifeline subscriber-related revenue reporting requirements support reporting gross intrastate retail revenue that would be charged to the subscriber if the charge were not recovered from the state or federal lifeline program. This requirement applies to all carriers that offer Lifeline services. The $9.25 Federal Lifeline reimbursement is provided in lieu of the customer paying the MRC and should be reported for KUSF purposes. For the period January 2012 through February 2017, Virgin Mobile owes an estimated $227,000 in additional KUSF assessments to the KUSF.[10]

On July 11, 2017, the KCC adopted GVNW's recommendations and issued an order directing Virgin Mobile to: 1) include all Lifeline-related revenue, including revenue that would

---

[10] Doc. 1, Ex. A at 2 (internal footnotes and citations omitted).

be collected directly from the end-user, absent the customer's Lifeline eligibility (including the $9.25 Federal Lifeline reimbursement), to the KUSF; and 2) submit True-ups for the period January 2012 through the period when Virgin Mobile ceases its present reporting practice and pay the additional assessments owed within sixty (60) days from the date of the order (the "Order"). Virgin Mobile petitioned the KCC to reconsider the Order. The KCC denied the petition for reconsideration on August 15, 2017.

Virgin Mobile filed this action, praying for: 1) a declaration that the Order violates federal law and is invalid to the extent that it requires it to contribute to the KUSF portions of its disbursements from the FUSF; 2) injunctive relief enjoining Defendants from enforcing the Order; and 3) all other relief as the Court may deem just and proper.

### III.  Legal Standard

Defendants seek dismissal of the entire Complaint pursuant to Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]  "Under this standard, 'the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.'"[13]  Although the Court assumes the complaint's factual allegations are true, it need not accept mere legal conclusions as true.[14]

---

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[12] *Id.* (citing *Twombly*, 550 U.S. at 556).

[13] *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

[14] *Id.* at 1263.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough to state a claim for relief.[15]

**IV.    Analysis**

The Complaint contains a single count entitled "Preemption of State Regulation in Violation of the Communications Act of 1934, as Amended."[16] Within that count, Virgin Mobile asserts five claims: 1) the Order relies on and burdens a mechanism of the FUSF in violation of 47 U.S.C. § 254(f) (the "Relies-On-Or-Burdens-the-FUSF Claim"); 2) the Order discriminates against Virgin Mobile by requiring it to contribute a greater rate to the KUSF than providers that do not serve qualifying low-income Kansas consumers in violation of 47 U.S.C. § 254(f) (the "Discrimination Claim"); 3) the Order is inconsistent with the FCC's rules to preserve and advance universal service (the "Consistency Claim"); 4) the Order is not a predictable state regulation because it employs a different methodology than the FCC in determining contributions to the universal service fund in violation of 47 U.S.C. § 254(f) and K.S.A. § 66-2008(a) (the "Non-predictable Claim"); and 5) the Order taxes federal subsidy as revenue, which discourages providers from serving low-income consumers in Kansas and thereby acts as a barrier for intrastate service in violation of 47 U.S.C. § 253(a) (the "§ 253 Claim").[17]

Defendants argue that because there is no general right of action to enforce the Supremacy Clause and none of the private rights of action conferred by the FCA apply here, the entire Complaint should be dismissed for lack of a private right of action, citing *Armstrong v.*

---

[15] *Iqbal*, 556 U.S. at 678.

[16] Doc. 1 at 3.

[17] Doc. 1, ¶¶ 22-28.

*Exceptional Child Center, Inc.*[18] Defendants contend that *Armstrong* precludes any *Ex parte Young* claim that Virgin Mobile asserts in this case. Alternatively, they argue Virgin Mobile failed to allege essential elements to plausibly state claims that the Order violated 47 U.S.C. §§ 253(a) and 254(f). Virgin Mobile argues that it brought a traditional *Ex parte Young* action, thus its claims may proceed even though there is no right of action in the Supremacy Clause and even if the FCA provided no statutory right of action for this suit.[19] Virgin Mobile maintains that its claims may proceed in equity under the *Ex parte Young* doctrine.[20]

### A. *Armstrong* does not mandate dismissal of the Complaint

Defendants argue *Armstrong* mandates dismissal of the Complaint because: 1) the FCA provides an express statutory remedy that requires Virgin Mobile to first obtain an FCC Order, and 2) the FCA's mandate to preserve and advance universal service is a broad and judgment-laden standard that is best left for the FCC to decide.[21] Defendants contend both *Armstrong* factors are present, which warrants concluding that Congress intended to preclude private equitable enforcement of the FCA in the courts.[22] The Court disagrees.

In *Armstrong*, the plaintiff brought suit against a state agency and its administrator seeking an injunction to force the agency to increase Medicaid reimbursement rates.[23] After the Supreme Court held that there was no private right of action under the Supremacy Clause,[24] it

---

[18] 135 S. Ct. 1378 (2015).

[19] Doc. 24 at 4. Virgin Mobile's arguments render discussion on the Supremacy Clause unnecessary.

[20] *Id.* at 7.

[21] Doc. 27 at 5–6.

[22] *Id.*

[23] *Armstrong*, 135 S. Ct. at 1382.

[24] *Id.* at 1384.

considered whether the suit could proceed in equity.[25]  The Supreme Court answered no, concluding "the Medicaid Act implicitly precludes private enforcement of [42 U.S.C. § 1396a(a)(30)(A)]" because two aspects of that Act established Congress's intent to foreclose equitable relief.[26]  First, "the sole remedy Congress provided for a State's failure to comply with Medicaid's requirements . . . is the withholding of Medicaid funds by the Secretary of Health and Human Services."[27]  Second, the Medicaid Act's mandate that state plans provide for payments that are 'consistent with efficiency, economy, and quality of care,' all the while 'safeguard[ing] against unnecessary utilization of . . . care and services'" is so broad that it is "judicially unadministrable."[28]  The Supreme Court stated, "[e]xplicitly conferring enforcement of this judgment-laden standard upon the Secretary alone establishes . . . that Congress wanted to make the agency remedy that it provided exclusive."[29]  The Supreme Court clarified that both factors were necessary to conclude that Congress intended to preclude private enforcement of § 30(A) in the courts.[30]

The Court finds Defendants' *Armstrong* arguments unpersuasive for four reasons.  First, *Armstrong* involved the Medicaid Act, not the FCA.  Second, the *Armstrong* plaintiffs were attempting to force state officials to pay them higher rates for habilitation services.  They

---

[25] *Id*. at 1385.

[26] *Id*.

[27] *Id*.

[28] *Id*.

[29] *Id*.

[30] *Id*. ("The provision for the Secretary's enforcement by withholding funds might not, by itself, preclude the availability of equitable relief.  But it does so when combined with the judicially unadministrable nature of § 30(A)'s text." (internal citations omitted)).

essentially attempted to use *Ex parte Young* as a sword.[31]  Here, Virgin Mobile wants the state officials to leave it alone, using *Ex parte Young* as a shield, rather than as a sword.[32]

Third, the FCA does not contain a sole remedy like the Medicaid Act (*i.e.*, the withholding of Medicaid funds by the Secretary).  The FCA's enforcement provision, 47 U.S.C. § 401, contemplates numerous remedies.[33]  Subsection (a) of § 401 provides for a writ or writs of mandamus commanding violators of a provision to comply with said provision.[34]  This remedy appears available to the United States Attorney General ("USAG") only.  Subsection (b) provides for injunctive relief if a person fails or neglects to obey an FCC order, other than for the payment of money.[35]  The FCC, any party injured by an FCC order, or the USAG may apply for

---

[31] *See Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014) (finding correctional officers' suit for overtime pay for time spent punching time clock, waiting in security line, and walking to assigned locations under the Fair Labor Standards Act could not proceed because the State had not threatened to sue anyone, thus plaintiffs were using *Ex parte Young* as a cause-of-action-creating sword).

[32] *Id.* (stating negative relief seeks to nullify a changed action or law, making no demand other than to be left alone; recognizing existing cause of action for that negative relief—anti-suit injunction).  *See Bellsouth Telecomm., LLC v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:16-CV-124-TBR, 2016 WL 4030975, *5 n.7 (W.D. Ky. July 26, 2016) (noting different treatment for parties seeking negative relief and those seeking affirmative relief).

[33] The FCA also contains other remedies that are inapplicable.  *See* 47 U.S.C. § 204 (permitting any person "damaged by any common carrier" to make a complaint to the FCC or bring suit, but not both); 47 U.S.C. § 252(e)(6) (permitting judicial review of State commissions' determinations as to interconnection agreements); 47 U.S.C. § 332(c)(7)(B)(v) (permitting any person adversely affected by any final action or failure to act by a State or local government regarding land use to commence an action in any court of competent jurisdiction).

[34] 47 U.S.C. § 401(a) states:

> The district courts of the United States shall have jurisdiction, upon application of the Attorney General of the United States at the request of the Commission, alleging a failure to comply with or a violation of any of the provisions of this chapter by any person, to issue a writ or writs of mandamus commanding such person to comply with the provisions of this chapter.

[35] 47 U.S.C. § 401(b) states:

> If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby, or the United States, by its Attorney General, may apply to the appropriate district court of the United States for the enforcement of such order. If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person or the officers, agents,

the enforcement of an FCC order. The FCA's savings clause, 47 U.S.C. § 414, provides additional remedies—those now existing in common law or by statute.[36] Courts have held that § 414 preserves causes of action for breaches of duties distinguishable from those created under the FCA.[37] "Many courts have also relied upon this savings clause to find that Congress intended to preserve state law claims for breaches of duties which are distinguishable from duties created by the Act."[38]

Fourth, Congress did not confer enforcement of the FCA to the FCC alone. The FCA contemplates a dual system of state and federal regulation over telecommunications services.[39] The FCA grants the FCC the authority to regulate "interstate and foreign commerce in wire and radio communication,"[40] while expressly denying it jurisdiction with respect to intrastate communication service.[41] The FCA provides that "[n]othing . . . shall . . . prohibit any State commission from enforcing regulations prescribed prior to February 8, 1996, or from prescribing regulations after February 8, 1996"[42] or "from imposing requirements on a telecommunications

---

or representatives of such person, from further disobedience of such order, or to enjoin upon it or them obedience to the same.

[36] 47 U.S.C. § 414 states, "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

[37] *Coop. Commc'ns, Inc. v. AT & T Corp.*, 867 F. Supp. 1511, 1516 (D. Utah 1994) (citing *Kellerman v. MCI Telecomm. Corp.*, 493 N.E.2d 1045, *cert. denied*, 479 U.S. 949 (1986); *Fin. Planning Inst., Inc. v. Am. Tel. & Tel. Co.*, 788 F. Supp. 75 (D. Mass. 1992)).

[38] *Bauchelle v. AT & T Corp.*, 989 F. Supp. 636, 648 (D. N.J. 1997) (*quoting DeCastro v. AWACS, Inc.*, 935 F. Supp. 541, 551 (D. N.J. 1996) (listing cases)).

[39] *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 360 (1986) ("The Act establishes, among other things, a system of dual state and federal regulation over telephone service.").

[40] 47 U.S.C. § 151.

[41] 47 U.S.C. § 152(b).

[42] 47 U.S.C. § 261(b).

carrier for intrastate services."[43]  For the foregoing reasons, the Court finds Defendants' reliance upon *Armstrong* misplaced.

The lack of a sole remedy in the FCA renders discussion on whether §§ 254(f) and 253(a)'s mandates are judicially unadministrable moot because both *Armstrong* factors are necessary to conclude that Congress intended to preclude private enforcement in the courts.[44]  Without the presence of the first *Armstrong* factor, the Court cannot find that Congress intended to preclude private enforcement of the FCA as Defendants suggest.  The Court concludes that *Armstrong* does not mandate dismissal of the Complaint.

### B. The *Ex Parte Young* doctrine

The *Ex parte Young* doctrine provides that a plaintiff may bring a suit against a state officer to enjoin violations of rights protected by the Constitution or afforded by federal law.[45]  In *Ex parte Young*, the Supreme Court announced an exception to the Eleventh Amendment—a plaintiff may obtain prospective equitable relief against a state official in federal court.[46]  The *Ex parte Young* doctrine has several important limits: 1) it applies only to alleged violations of federal law; 2) it applies only to ongoing violations, not suits seeking retroactive or

---

[43] 47 U.S.C. § 261(c).

[44] *Bellsouth Telecomm., LLC v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:16-CV-124-TBR, 2016 WL 4030975, *4 (W.D. Ky. July 26, 2016) ("The Supreme Court clarified that the combination of both factors was necessary to conclude that Congress intended to preclude private enforcement of § 30(A) in the courts." (internal quotations and citation omitted)).

[45] *Ex parte Young*, 209 U.S. 123, 159–60 (1908); *Davis v. Gray*, 83 U.S. 203, 216 (1872) ("... a Circuit Court of the United States, in a proper case in equity, may enjoin a State officer from executing a State law in conflict with the Constitution or a statute of the United States, when such execution will violate the rights of the complainant.").

[46] *Ex parte Young*, 209 U.S. at 160.

compensatory wrongs; and 3) it does not permit an award for relief that is the practical equivalent of money damages, even if it is characterized as equitable.[47]

Several subsequent Supreme Court cases have narrowed *Ex parte Young's* scope—*Seminole Tribe of Florida. v. Florida*,[48] *Idaho v. Coeur d'Alene Tribe of Idaho*,[49] and *Armstrong v. Exceptional Child Center, Inc.*[50] Defendants urge the *Armstrong* limitation applies, but for the reasons discussed above, the Court finds it does not. Despite these limitations, *Ex parte Young* remains available as a vehicle for a plaintiff to remedy a violation of rights conferred by the Constitution or federal law.[51]

In *Verizon Maryland, Inc. v. Public Service Commission of Maryland*,[52] the Supreme Court held that Verizon's suit against the individual commissioners in their official capacities may proceed under the *Ex parte Young* doctrine. The Supreme Court stated, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation

---

[47] *Lewis v. N.M. Dep't of Health*, 94 F. Supp. 2d 1217, 1229 (D. N.M. 2000), *aff'd*, 261 F.3d 970 (10th Cir. 2001).

[48] 517 U.S. 44, 74 (1996) (holding *Ex parte Young* did not provide jurisdiction to seek equitable relief because the Act contains a "detailed remedial scheme" demonstrating Congress's intent to limit other remedies, such as injunctive relief).

[49] 521 U.S. 261, 273 (1997) (requiring an investigation into the nature of the claim, the state's interest and the potential effect of the requested relief in order to determine what sovereign interests the court's decision might affect and whether federal jurisdiction is appropriate).

[50] 135 S. Ct. 1378, 1384 (2015) (holding Medicaid providers cannot sue for an injunction in the courts because two aspects of the Act established Congress's intent to foreclose equitable relief—the Act provided a sole remedy to the Secretary and conferred enforcement of its judgment-laden standard upon the Secretary alone).

[51] *See V-1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415, 1421 n2 (10th Cir. 1997) (agreeing with the Second Circuit that *Ex parte Young* is still viable after *Seminole*). *See also* David Currie, *Response: Ex parte Young After Seminole Tribe*, 72 N.Y.U. L. Rev. 547, 547 (1997) ("Not to worry; *Ex parte Young* is alive and well and living in the Supreme Court."); *Private Rights of Action-Equitable Remedies to Enforce the Medicaid Act-Armstrong v. Exceptional Child Center, Inc.*, 129 Harv. L. Rev. 211, 220 (2015) (noting the *Armstrong* majority did not call *Ex parte Young* into question).

[52] 535 U.S. 635 (2002).

of federal law and seeks relief properly characterized as prospective."[53]  The Supreme Court noted that "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim."[54]

Applying the straightforward inquiry here, this is a suit alleging the two requirements the Supreme Court set out in *Verizon Maryland*.  Virgin Mobile alleges an ongoing violation of federal law—the KCC order violates the FCA in several ways.  Furthermore, Virgin Mobile seeks prospective relief in the form of an injunction halting enforcement of the KCC's order requiring it to report federal subsidies it received as revenue and pay an assessment on that revenue to the KUSF.  The Complaint thus presents a traditional *Ex parte Young* action.  The Court concludes it has equitable jurisdiction to hear Virgin Mobile's claims.[55]

### C.   Sufficiency of Allegations

Alternatively, Defendants contend Virgin Mobile's claims are inadequately pled. Defendants argue each claim misses a necessary element or states a legally invalid claim.  The Court will discuss the claims seriatim.

#### 1.   The § 254(f) Claims

Section 254(f) states:

A State may adopt regulations not inconsistent with the Commission's rules to preserve and advance universal service.  Every telecommunications carrier that provides intrastate telecommunications services shall contribute, on an equitable and nondiscriminatory basis, in a manner determined by the State to the preservation and advancement of universal service in that State.  A State may adopt regulations to provide for additional definitions and standards to preserve and advance universal service within that State only to the extent that such regulations adopt additional specific, predictable, and sufficient mechanisms to

---

[53] *Id*. at 645 (internal quotations and citation omitted).

[54] *Id*. at 646.

[55] *See Bellsouth Telecomm. LLC v. Louisville/Jefferson Cty.*, No. 16-CV-124, 2016 WL 4030975, *5 (W.D. Ky. July 26, 2016) (finding court has equitable jurisdiction to hear telecommunications service providers claim against utility commission that its ordinance was preempted by federal law).

support such definitions or standards that do not rely on or burden Federal
universal service support mechanisms.

Virgin Mobile asserted four claims from these three sentences.

### a) The Consistency Claim

Paragraph 24 of the Complaint sets forth the Consistency Claim as follows:

[T]he Order requires contributions to the Kansas USF in a manner inconsistent
with the FCC's rules for advancing universal service in several respects. The
Order effectively reduces the amount of Lifeline funds that Virgin Mobile
receives from the amount that the FCC has determined to be appropriate for
ensuring that "low-income consumers" "have access to telecommunications and
information services" at rates that are "just, reasonable and affordable." 47
U.S.C. § 254(e), 254(b)(1), and 47 U.S.C. § 254(b)(3); see 47 C.F.R. § 54.400 et
seq. By requiring Kansas USF contributions on Federal USF funds, the Order
imposes additional costs on Lifeline consumers and Virgin Mobile, potentially
increasing costs for low-income Kansas consumers above the level found to be
affordable by the FCC.

Defendants argue the plain language of § 254(f) demonstrates the Consistency Claim is really a defense that belongs solely to the FCC as the administrator of the FUSF, and not to Virgin Mobile.[56] They say this claim requires evaluating a "broad" and "judgment-laden" standard, which the FCC is better suited than the courts to decide if the FUSF is being harmed by the alleged inconsistency.[57] The Court finds these arguments unpersuasive.

As to standing, the FCC undoubtedly has an interest in the FUSF, but so does Virgin Mobile as a contributor. Virgin Mobile alleged it has a property interest in the Lifeline subsidies. It brought this action anticipating that the KCC will indict it for failing to comply with the Order. Thus, it asserts an equitable defense that belongs to it.[58]

---

[56] Doc. 27 at 9–10.

[57] *Id.* at 10.

[58] *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014) (recognizing existing cause of action for negative relief to be left alone as anti-suit injunction).

The broad-and-judgment-laden-standard argument rehashes Defendants' *Armstrong* arguments. The Court rejects this argument for the reasons stated above. As to who is better suited to decide this issue, the Court notes that courts are often asked to review and interpret statutes. Courts also routinely determine whether a statute, rule, or regulation is consistent. Indeed, several courts have interpreted these provisions.[59] Because Defendants' arguments are unpersuasive, the Court denies the motion to dismiss on that basis.

### b) The Discrimination Claim

Paragraph 23 of the Complaint sets forth the Discrimination Claim as follows:

> [T]he Order imposes inequitable, discriminatory contribution obligations on Virgin Mobile. The Order binds only Virgin Mobile, and thus requires Virgin Mobile to contribute at a greater rate than other providers contribute to the Kansas USF. But the Order would violate Section 254's prohibition on inequitable, discriminatory contribution requirements even if it bound all Lifeline providers, as the KCC does not assess disbursements from any other Federal USF program. Through the Order, the KCC discriminates against Virgin Mobile (and would discriminate against any other Lifeline provider that the KCC may attempt to bind) by requiring it to contribute at a greater rate to the Kansas USF than providers that do not serve qualifying low-income Kansans, but receive disbursements from other Federal USF programs.[60]

Defendants argue the Order expressly states that "[its] requirement applies to all carriers that offer Lifeline services,"[61] thus it extends to other similarly-situated regulated parties and is not discriminatory. Defendants' argument fails to address whether the Order affects providers that

---

[59] *See AT&T Corp. v. Pub. Util. Comm'n of Tex.*, 252 F. Supp. 2d 347, 350-53 (W.D. Tex. 2003) (interpreting Section 254(f) and concluding that state assessment was unjust, discriminatory, impermissibly burdened the Federal USF, and impermissibly relied upon the Federal USF), *aff'd*, 373 F.3d 641 (5th Cir. 2004); *AT&T Commc'ns, Inc. v. Eachus*, 174 F. Supp. 2d 1119, 1123-25 (D. Or. 2001) (interpreting § 254(f) and concluding state regulations improperly relied on federal universal service support mechanism); *XO Mo., Inc. v. City of Md. Heights*, 256 F. Supp. 2d 987, 991–92 (E.D. Mo. 2003) (interpreting § 253(a)).

[60] Doc. 1 at 4.

[61] Doc. 1–1 at 3.

do not serve qualifying low-income-Kansans. For this reason, the Court denies the motion to dismiss on this basis.

### c) The Relies-On-Or-Burdens-the-FUSF Claim and the Non-Predictable Claim

Paragraph 22 of the Complaint asserts the Relies-On-Or-Burdens-the-FUSF Claim, alleging, "by attempting to fund the Kansas USF with portions of Federal USF disbursements, the KCC's Order both relies on and burdens a mechanism of the Federal USF."[62] Paragraph 27 sets forth the Non-Predictable Claim as follows:

> [B]y requiring contributions to the Kansas USF under a different methodology than the FCC employs—through the ad hoc adoption of a contractor's audit report of a single provider—the Order deviates from existing Kansas law, and is thus not a "predictable" state regulation for furthering universal service, as required by the Act. 47 U.S.C. § 254(f); *see* K.S.A. § 66-2008(a) (prohibiting the KCC from requiring "providers to contribute to the [Kansas USF] under a different contribution methodology than such provider uses for purposes of the federal universal service fund.").[63]

Defendants argue the text of § 254(f) expressly imposes the adoption of additional definitions and standards as a condition precedent for any relying-burdening-predictability claim.[64] Defendants contend both these claims fail because Virgin Mobile did not allege the KCC has adopted additional definitions and standards or even identified the offending act. The Court rejects this argument because the Complaint, which includes the Order, identified the offending acts—the KCC's issuance of the Order and its adoption of the requirement that all carriers that offer Lifeline services report the subsidies it received from the Federal Lifeline program as revenue subject to KUSF assessment. The Court infers from the Order's citation to

---

[62] Doc. 1 at 4.

[63] *Id.* at 5.

[64] Doc. 27 at 11. The Court questions whether "the adoption of additional definitions and standards" is a prerequisite element for a § 254(f) claim based on its plain language. The Court's conclusion that that element has been alleged, however, renders the Court's question moot.

the KUSF's Carrier Remittance Worksheet Instructions that the KCC had adopted some rules and provided instructions on how to calculate total gross intrastate revenue.[65] The Court finds Virgin Mobile has alleged adoption of additional standards and definitions.

Defendants also argue the Non-Predictable Claim and the Discrimination Claims are legally defective because they ignore the administrative law principle that agencies have discretion to develop the law through case-by-case adjudication, rather than by industry-wide rulemaking.[66] Although the administrative law principle applies, the KCC violates § 254 if it adopts regulations that are not predictable, notwithstanding this principle. Virgin Mobile takes issue with the Order, not only because it was based on an ad hoc audit, but also because it allegedly is contrary to K.S.A. § 66-2008(a), making it unpredictable and discriminatory. For this reason, the Court denies dismissal on this basis.

### 2. The § 253(a) Claim

Section 253(a) states, "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."[67] Paragraphs 25 and 28 of the Complaint set forth the § 253(a) claim. Paragraph 25 alleges:

> [T]he Order will undermine the FCC's regime for advancing universal service by driving providers from serving low-income consumers in Kansas. The FCC requires providers participating in the Lifeline program to pass through the full amount of the subsidy that they receive. 47 C.F.R. § 54.403(a)(1). By taxing that subsidy as revenue, despite Virgin Mobile's inability to collect upon it, the Order will discourage or hinder other providers from serving low-income consumers in Kansas.[68]

---

[65] Doc. 1-1 at 2, n.1.

[66] Doc. 22 at 15–16 (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947); *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 294 (1974)); Doc. 27 at 13.

[67] 47 U.S.C. § 253(a).

[68] Doc. 1 at 5.

Paragraph 28 alleges:

> The Order also violates Section 253(a) of the Act, which expressly preempts any state law or local regulation that "may . . . have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). As explained above, the Order will drive providers from the market for intrastate service to low-income Kansans, because it reduces the subsidy that the FCC (i) has determined is necessary to bring providers into that market, and (ii) requires providers to pass through, in full. The Order thus imposes a barrier to entering the market for intrastate service to low-income consumers in Kansas, effectively prohibiting the provision of that service in violation of Section 253(a).[69]

Defendants argue this claim fails because: 1) Virgin Mobile did not allege the Order would drive it from the market, but only alleged that the Order would drive "providers" from the market; 2) Virgin Mobile did not set out the KUSF assessment rate on intrastate revenue or how it would drive Virgin Mobile from the market; and 3) Virgin Mobile did not explain why it should not be held responsible for its business decision not to mitigate the financial impact of the assessment by obtaining reimbursement for it from its customers as authorized by K.S.A. § 66-2008(a). The Court finds these arguments unpersuasive. First, the Court infers Virgin Mobile's reference to "providers" in paragraphs 25 and 28 included itself because the last sentence in paragraph 25 specifically ties hinderance of service to low-income consumers with Virgin Mobile's inability to collect the Lifeline support amount from those consumers.[70] Second, details regarding the KUSF assessment rate and its market impact are matters best left for discovery and on summary judgment. Third, in paragraph 25 of the Complaint, Virgin Mobile alleged that the FCC requires providers participating in the Lifeline program to pass through the full amount of the support to the low-income consumers and that it was unable to collect on it.

---

[69] *Id*. at 5–6.

[70] To the extent Virgin Mobile attempts to assert a claim on behalf of other providers, the Court finds it lacks standing to do so and any such claims are dismissed for that reason.

These allegations suggest Virgin Mobile's compliance with a federal regulation was the reason why it did not utilize K.S.A. § 66-2008(a) to mitigate the Order's impact on it.  The Court finds Virgin Mobile has pled sufficient facts to state a plausible claim that the Order has the effect of prohibiting its ability to provide intrastate service to low-income Kansas consumers.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 22) is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 7, 2018

 S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE